## A. COLBERT v. THE STATE.

1. ATTACHMENT FOR WITNESSES.—When a witness lives in the county where the case is pending, an attachment cannot issue against him until he has disobeyed a subpœna.

2. ALIBI.—Though liable to great abuse, an *alibi* is often the only defense available to an innocent man against an unfounded charge.

3. FALSE PRETENSE.—There has been some conflict of decisions, but it is now generally held that a false pretense may be indictable, though not calculated to deceive a person of ordinary prudence; and the same pretense might be indictable under some circumstances and not indictable under others.

4. SAME—INDICTMENT.—An indictment for swindling W. and Brother

charged that the offense was committed by the presentation and collection· of an order for money, by falsely representing the same to be the order of one Q., when, in fact, as the accused well knew, it was not the order of said Q.; but the indictment failed to allege to whom the order was presented, or to whom the false representations were made. *Held*, that in these omissions the indictment was fatally defective, and the motion to quash. should have been sustained.

APPEAL from the District Court of Washington. Tried. below before the Hon. E. B. TURNER.

The material facts are disclosed in the opinion of this court..

*Breedlove & Ewing*, for the appellant.

1st. The court erred in overruling the motion to quash the indictment. The crime intended to be charged is that of " swindling," as defined by Article 2426, Paschal's Digest, and the facts constituting the offense and the means by which it was accomplished should have been set out with great particularity. *Baggerly* v. *The State*, 21 Texas, 750. There seems to have been some attempt to do this, yet we think the indictment is defective in several respects, and,. among others, we call attention to the following:

(1.) It does not appear how the swindling was accomplished; whether the paper copied in the indictment was presented to A. Werner & Bro. as an order drawn upon them, and that it was paid by them, or that it was drawn upon some other person and negotiated or sold to Werner & Bro. It will be observed that the order itself does not show whom it was intended to be drawn against, being addressed to " Mr. A. W. ;" and, while it is true that these are the initials of either member of the firm, and may have been intended for one of them, yet they may stand equally as well for some other person. Certainly they are not the initials of the firm of A. Werner & Bro., who are said to have been swindled. The indictment should show either whom the order was drawn against, or whom the defendant

said it was drawn against, and how the swindling was effected—whether by the sale or collection of the order. *State* v. *Dyer*, 41 Texas, 521.

(2.) The falsity of the order is not charged with sufficient certainty. The allegation is "that said Henry Quebe had not made said instrument in writing," but does not negative the idea that it may have been made by his authority. Is not this necessary in cases like the one at bar? We think so ; for unless it is proved that this order was neither made by Henry Quebe nor by his authority, the prosecution must fail. *Shanks* v. *The State*, 25 Texas (Supp.), 340. The county attorney realized the necessity of making this proof, and was permitted to do so over the defendant's objection.

(3.) It is not alleged that A. Werner & Bro. were deceived or misled in any way, or that they believed or put any confidence in the order or in the statement of the defendant. It would seem that, in order to constitute the crime of swindling, it is necessary, not only that the accused shall make false pretenses and representations, but that some other person shall be misled and deceived thereby. In the case at bar, how can it be said that A. Werner & Bro. were swindled, and induced to part with their money by means of a forged order and false statement, unless they believed the order genuine and the statement true?

In the case of *Cline* v. *The State*, 43 Texas, 494, the question presented was whether the offense was swindling or theft, and the court held that this depended upon the fact whether or not the party injured had parted with his property in the money by a loan of it to defendant before its caption and asportation by his confederate. If, relying upon the false and fraudulent statements and pretenses of the defendant, he had lent him the money, it was clearly a case of swindling ; but if he had not parted with his property in it, then the taking of the money was theft. If the injured party is not deceived by the false pretenses, and

thereby induced to part with his property, then it is not a case of swindling. *People* v. *Stetson*, 4 Barb. 151; *R.* v. *Mills*, Dears. & B. C. C. 205; 7 Cox C. C. 263; *R* v. *Dale*, 7 Car. & P. 352; *People* v. *Herrick*, 13 Wend. 87; 2 Bishop on Cr. Law, sec. 462; Whart. on Am. Cr. Law, 635, 636.

2d. The court erred in admitting illegal evidence. The force of this objection will be readily seen by reference to the bills of exception, and by comparing the proof objected to with the allegations in the indictment.

The defendant is charged with swindling A. Werner & Bro. by means of a certain order and false statement set out in the indictment. The order does not appear to have been drawn against, or addressed to, A. Werner & Bro., nor is there any averment that the defendant, either by word or act, represented that it was drawn upon the firm. It is alleged "that the said Henry Quebe aforesaid had not made said instrument in writing, and that the said Arthur Colbert was not then and there authorized by said Henry Quebe, as he, the said Arthur Colbert, then and there well knew, to use the said instrument in writing as an order for money or goods of and from the said Henry Quebe on the said A. Werner & Bro., as aforesaid." But this is not sufficient. This is a denial that the defendant had a right to use the instrument in writing as an order on the firm, but there is no allegation that the defendant did use it in that way. Unless he did, how could the firm be deceived or swindled? Why should they pay out money upon an order not drawn upon them? Certainly proof of this fact was necessary in order to sustain the charge against the defendant; and, if so, it should have been alleged in the indictment. *The State* v. *Levi*, 41 Texas, 564.

Another objection is that this order is not such a deceitful device as is contemplated by the statute. It is not a forgery

of the name of Henry Quebe, the order being plainly signed *Henry Squebbye*, and there is no direct allegation that it was intended as a forgery at all. For all the indictment alleges, this instrument may have been a genuine order drawn by Henry Squebbye, whose name is affixed to it.

Still, a third ground for excluding it is that it is not charged that the defendant represented that he was the owner of the order, or that it had been drawn in his favor. Without such a representation, A. Werner & Bro. were not warranted in paying money on it to the defendant, and could not have been swindled by the use of it.

It is a familiar rule of pleading, which applies with equal force to criminal and civil practice, that the pleader always states his case as favorably to himself as the facts will warrant, and we think that in the case at bar the failure to make the allegations which were necessary to admit this order in evidence, and to make out a case against the defendant, was caused by the knowledge that they could not be supported by the proof.

The same objection applies with equal or greater force to the other evidence admitted over the defendant's objection. After overruling the motion to quash the indictment for want of certain averments which were thereby held to be immaterial, the court permitted the state to introduce proof to establish those very facts.

If, for instance, it was necessary to prove " that the order was not made by Henry Quebe, *nor by his authority*," then that fact should have been alleged in the indictment, and, having been omitted, the motion to quash should have been sustained. But the court overruled the motion, thus holding that this was not a necessary averment, and then permitted the state to prove this fact to complete the offense. There being no allegation to support it, this evidence should have been excluded.

*George McCormick*, Assistant Attorney General, for the State.

Ector, Presiding Judge.    Arthur Colbert, the appellant, was indicted, tried, and convicted in the district court of Washington county, at its July term, 1876, for swindling, and his punishment assessed at three years' confinement in the penitentiary.    It is charged in the indictment that the offense was committed on the 10th day of June, 1876.

The defendant, in the court below, made a motion to quash the indictment:

"1st.  Because it does not charge any offense known to, or defined by, the law.

"2d.  Because the indictment is too vague, uncertain, and insufficient to put defendant upon trial."

When the case was called for trial, on the 26th of July, the defendant, Colbert, filed his application for a continuance for the want of the testimony of Albert O'Neal, Robert Lee, and Jack Colbert, who, he states, reside in Washington county, witnesses for the defendant.

Defendant's motion for continuance and his motion to quash the indictment were overruled by the court, to which the defendant excepted, and filed his bill of exceptions.

The assignment that the court erred in overruling defendant's motion for a continuance is shown by the affidavit, motion, and bill of exception to be well taken.    This was a first application for a continuance, and stated everything that was required by Article 2987, Paschal's Digest.

An examination of the statement of facts will show the materiality of the evidence of the witnesses named for the defendant.    He states that the witnesses by whom he could prove the facts set out in his affidavit were residents of Washington county; that as soon as he knew that he was indicted he caused subpœnas to issue for said witnesses, and placed them in the hands of the sheriff, and instructed

said sheriff to summon said witnesses at once; that he cannot find said subpœnas, and does not know whether the same have been executed or not; that said witnesses are not absent by the procurement or consent of the defendant, and that this application is not made for delay, but that justice may be done.

This was, we believe, due diligence. Until a witness residing in a county has disobeyed a subpœna, an attachment cannot issue for him. The object of the testimony of the witness, as shown from the affidavit, was to prove an *alibi*. Whilst the defense of an *alibi* is frequently resorted to, and is greatly liable to abuse, it is often the only defense an innocent man can make against an unfounded charge.

The defendant's affidavit for a continuance was a compliance with the law, on the first application, and should have been granted as a matter of right.

The counsel of the defendant asked the following special charges, which the court refused to give:

"1st. You are the judges of the evidence in this case, and you may reasonably inquire: Was the paper offered in evidence calculated to mislead Mr. Werner, and did it reasonably mislead him?

"2d. In every business transaction every man is supposed to exercise that amount of prudence ordinarily possessed by prudent men, and if any person presented to Mr. Werner the paper offered in evidence it was his duty to inspect the same, and act with the same amount of caution that should govern a man of ordinary prudence, and if he failed to do so he cannot complain."

There has been a conflict of opinion as to whether the false pretenses, to be indictable, should be such as would necessarily impose upon a man of ordinary prudence. In New York, Pennsylvania, Arkansas, and some of the other states, it has been held that a representation, though false, is not within the statute making it an offense to obtain

money or other property under false pretenses, unless calculated to deceive persons of ordinary prudence. In Pennsylvania and New York such is no longer the law, it being now held that it is not less a false pretense that the party imposed upon might by common prudence have avoided the imposition.

We think that it is generally received, both in England and the United States, as the law, that the pretense need not be such an artificial device as will impose upon a man of ordinary prudence or caution; that the pretense need not be such as cannot be guarded against by ordinary caution or common prudence. And this doctrine has been carried so far in England that, where a man passed out to another person for change a bank-note, saying it was for £5, when really it was, as he knew, a £1-note, he was held to have committed the offense, though the person to whom he passed the note could read; and Lord Campbell, C. J., in the opinion says: " We are all of the opinion that the conviction was right. In many cases a person giving change would not look at the note, but, being told it was a £5-note, and asked for change, would believe the statement of the party offering the note, and change it. Then if, giving faith to the false representations, the change is given, the money is obtained by false pretenses." 2 Bishop on Cr. Law, 435.

Few men of business are ever found so wary as not, at some time of life, to commit a mistake therein which any jury of twelve men would say, on their oaths, could not be done by a man of ordinary prudence and discretion. Courts, with due regard to the facts of human life, should not direct a jury to weigh a pretense, as an inducement to action, in any other light than of its effects. Mr. Wheaton, in his work on American Criminal Law (sec. 2131), uses the following language: " It is submitted, however, that, whether the prosecutor had the means of detection at hand, or

21

whether the pretenses were of such a character as to impose upon him, are questions of fact to be left to the jury, as they must necessarily vary with the particular case."

Cases might be presented to this court in which a verdict ought to, and would, be set aside if the court felt satisfied the jury had convicted a defendant when the testimony showed that the pretenses used were innocent, and not calculated to deceive. And Caton, J., in an Illinois case, pertinently observed: " Should an article, the essential value of which consisted in its color, be offered to a person fully possessed of the sense of sight, and with every opportunity for inspection, with the pretense that it was white, when in fact it was black, under such circumstances the false pretense might be very innocent, because it was not calculated to deceive; while the same pretense made to a blind person would be calculated to deceive, and might be subject to punishment." 2 Bishop on Cr. Law, 434.

The court properly refused to give the special charges asked by the defendant. This brings us to the consideration of the question as to the sufficiency of the indictment, and we will copy from the indictment all that portion of it which speaks of the presentation of the instrument of writing read in evidence, and the false or deceitful pretense or fraudulent representations about the same that were made by the defendant as the means of swindling A. Werner & Bro., which is as follows, to wit: " That the said Arthur Colbert, having in his possession a certain instrument in writing, which is in words and figures as follows, that is to say: 'June 10th, 1876, Brenham, Texas. Mr. A. W., please pay to this Freadman, $8.00. Henry Squebbye;' which said instrument in writing he, the said Arthur Colbert, then and there well knew to be a deceitful device, did then and there make the following statement and representation, to wit: 'Here is an order (meaning the said instrument in writing) from Mr. Quebe' (meaning one

Henry Quebe, of said state and county aforesaid); all of which was then and there false, deceitful, fraudulent, and pretended, as in truth and in fact he, the said Arthur Colbert, then and there well knew," etc.

It is nowhere alleged in the indictment to whom said instrument in writing was presented, or to whom said false representations in regard to the same were made. It is not charged that this instrument in writing was presented to one or both of the members of the firm of A. Werner & Bro., or to any agent of theirs. We think the indictment should have alleged to whom said instrument in writing was presented, and to whom said false representations in regard to it were made. The court below committed an error in overruling the defendant's motion to quash the indictment.

The judgment of the district court in this case is reversed and the cause dismissed.

*Reversed and dismissed.*